BOLDING v. CAMP et al.  (No. 2809.)

Court of Civil Appeals of Texas.  Amarillo. May 11, 1927.

Rehearing Denied June 15, 1927.  Second Petition for Rehearing Denied Sept. 7, 1927.

1. Mines and minerals ☞99(1), 101—Liability of partners and joint adventurers for labor and material furnished is same.

Liability of partners and joint adventurers for labor and material furnished for development of oil lease by them is the same.

2. Partnership ☞218(3)—In absence of express agreement, existence of partnership is fact question for trial judge.

In absence of express agreement to form partnership, question is one of fact for determination by trial judge from all the circumstances.

3. Mines and minerals ☞97—Finding of partnership in oil lease between defendants held supported by agreed facts.

Facts disclosed by agreed case, in action for amounts due for labor and material furnished to develop oil lease, held to support trial court's conclusion that mining partnership existed between one defendant and his codefendants.

4. Mines and minerals ☞99(1)—Purchaser of interest in mineral lease for purpose of sharing in profits held liable to creditors, in absence of agreement with them limiting liability.

One purchasing interest in oil lease for purpose of sharing proportionately in profits held liable to creditors, in absence of agreement with them that he was not to be held liable beyond amount contributed, though he had understanding with other owners that they should bear expenses of drilling well.

5. Mines and minerals ☞99(1), 101—All members of mining partnership, joint adventure, or joint-stock association and business trust, engaged in mining, are liable as partners for necessary materials and labor.

While one member of mining partnership generally is not liable for money borrowed by another, all members of such partnership, joint adventure, or joint-stock association and business trust engaged in mining, are liable as partners, in absence of special agreement with creditors exempting them, for all indebtedness incurred for necessary material or labor furnished for prosecution of work.

6. Mines and minerals ☞99(1)—Partner visiting site of oil well being drilled must be held to have known of necessary expenditures for labor and materials.

Partner visiting site of oil well being drilled by his copartners must be held to have known that expenditures were being made for labor and materials, and that they were necessary.

7. Appeal and error ☞934(2)—Under agreed statement that pleadings were sufficient, appellate court must presume that plaintiff, recovering judgment, pleaded facts estopping defendant to deny liability.

Under agreed statement that pleadings were sufficient, appellate court must presume, in support of judgment for plaintiff, that he pleaded facts estopping defendant to deny liability.

8. Mines and minerals ☞99(1)—Partner visiting site of oil well being drilled held estopped to deny liability for necessary labor and materials.

Partner visiting site of well being drilled by his copartners tacitly agreed to all that was being done in and about prosecution of work, and hence was estopped to deny liability for indebtedness incurred for necessary labor and material.

On Motion for Rehearing.

9. Mines and minerals ☞99(1)—One purchasing interest in mining lease, being developed by parties holding no stock in corporation or association, held "dormant partner."

One purchasing interest in mining lease, being developed by parties whose interests were not represented by stock in corporation or joint-stock association, held a "dormant partner" by operation of law and circumstances surrounding purchase.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dormant Partner.]

10. Partnership ☞162—Persons jointly participating in profits are equally liable with ostensible owner for debts contracted without creditors' knowledge of such participation or partnership relation.

Persons jointly participating in profits of trade or business, ostensibly carried on by another for his sole use or benefit, are equally liable with latter to all creditors of firm, whose debts were contracted during such participation, without knowledge thereof or of actual relation between parties, though latter privately stipulated that they should not be partners, and were not such as between themselves.

Appeal from District Court, Wichita County; W. W. Cook, Judge.

Actions by E. E. Camp and others against W. P. Bolding and others, consolidated for trial.  From a judgment for plaintiffs Camp

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and others, the defendant named appeals. Affirmed.

Fitzgerald & Hatchitt, of Wichita Falls, for appellant.

F. G. Swanson, of Wichita Falls, for appellee Camp.

Kilgore, Rogers, Montgomery & Carrigan, of Wichita Falls, for appellees L. I. and M. S. Bennett.

Kay, Akin & Smedley, of Wichita Falls, for appellee Wichita Electric Drilling Co.

HALL, C. J. By agreement of all parties, the appellant has been permitted to file new briefs, and the case is now before us for determination upon the merits. The record contains no copy of any of the pleadings, and the controversy is submitted by a brief statement of the case under R. S. art. 2280. The substance of the statement is that the appellant Bolding was one of the defendants in a consolidated cause upon the docket of the district court of Wichita county. The court consolidated several cases, filed by different plaintiffs, against the same defendants, among them being W. P. Bolding, appellant, A. J. McNeese, and A. L. Wiley. The statement further recites that the pleadings were sufficient, that the plaintiffs alleged that the various defendants were partners, owning, and engaged in the development of, a particular mineral lease, and, as such partners, were indebted to each plaintiff in various amounts for labor or material furnished to said lease. In addition to said averments, plaintiffs M. S. and L. I. Bennett pleaded in the alternative that, if the several defendants were not general partners, then as joint owners of said lease, engaged in the joint enterprise of developing the same, they were mining partners, and each knew of the necessity for, and the fact of, such plaintiffs' furnishing to said lease fuel oil necessary for, and used in the furtherance of, such joint enterprise, in developing said lease.

The appellant, Bolding, answering each of the several demands thus made against him, seasonably filed sworn denial of any partnership between him and any of his codefendants, and denied liability in any amount sued upon; that plaintiffs and interveners below established by appropriate evidence that the respective amounts allowed each of them in the judgment below was due and owing for work, supplies, materials, improvements, and labor furnished by them, respectively, on the lease in question.

It is further agreed that the sole question on this appeal is the liability of the said W. P. Bolding to the several appellees herein, and such liability, if any, rests alone upon whether or not, under the proof made, he was a partner with McNeese, Wiley, and his other codefendants, and, in the case of the Bennetts, whether or not Bolding was a mining partner with his codefendants, if not a general partner; and it is further agreed that, if such proof was insufficient, the judgment should be reversed as to all of the appellees; otherwise it should be affirmed as to all.

The material facts stated are as follows:

(a) That in January, 1924, the appellant Bolding paid McNeese and Wiley the sum of $600 in cash, receiving in return a letter evidencing that he (Bolding) was the owner of a one-sixteenth interest in a certain 15-acre mineral lease, with a well thereon; that the lease referred to in said letter was the same lease on behalf of which all of the debts sued on were incurred in drilling the second well, which was drilled after the completion of the first well.

(b) That at all times McNeese and Wiley alone were in active charge of the development of said lease, and alone directed and supervised all of the work and development thereon, and alone purchased the materials by reason of which the debts herein sued on were incurred.

(c) That, during the drilling of said second well on the lease in question, the appellant, Bolding, on two different occasions, at night, was seen on said lease and at said well; that, at the time of the completion of said second well, M. S. Bennett of the K. M. A. Fuel Oil Company had a telephone conversation with appellant in regard to her debt against the lease in question, in which conversation Bolding was asked if he was interested in the company developing said lease, and he said that he was. When he was informed that the bills were not being paid promptly, he stated that he had paid in his interest, and that he did not have anything to do with the management of the lease. When informed that some money would have to be paid on the Bennett account, he stated that he would speak to Wiley about it. Mr. Frances, representing one of the plaintiffs, also had some conversation with appellant, in which appellant stated to Frances that he had an interest in said lease, and that his interest was paid for, and that Wiley and McNeese would pay the account, and that he would see them about paying it.

It is further agreed that no plaintiff below pleaded that credit was advanced by reason of any knowledge that Bolding was interested therein, nor was there any pleading that Bolding held himself out as a partner.

Judgment was rendered that some of the plaintiffs take nothing, and in favor of other plaintiffs, for the several sums claimed, against Wiley, A. J. McNeese, Mrs. Theo. McNeese, W. B. Baldwin, and W. P. Bolding, as partners. W. P. Bolding alone has appealed.

In accordance with the agreement, the sole question to be decided is whether the appellant, under the statement, was properly held liable as a partner for the several amounts adjudged against him.

[1-5] Our conclusion is that he was either a partner or a joint adventurer, and, in either event under the agreed statement, the judgment should be affirmed, because in either event the liability of appellant in a case of this character would be the same. Griffin v. Reilly (Tex. Civ. App.) 275 S. W. 242; Finney v. Terrell (Tex. Civ. App.) 276 S. W. 340. There being no express agreement for the formation of a partnership between appellant and his codefendants, it became a question of fact to be determined by the trial judge from all the circumstances, and we think the facts disclosed by the agreed case amply support the trial court in concluding that there was a mining partnership between appellant and his codefendants. When appellant bought his one-sixteenth interest in the adventure, it was for the purpose of sharing proportionately in the profits, if any, to be derived therefrom, and, while he may have had an understanding with his codefendants that they should bear the expenses incident to the drilling of the second well, this would not affect his liability to the creditors, in the absence of any agreement with them that appellant was not to be held liable beyond the $600 contributed by him. While the facts set forth in the agreed statement are meager, they are sufficient to support the court's finding upon the issue of the existence of a mining partnership. Mayfield v. Key (Tex. Civ. App.) 260 S. W. 926; Munsey v. Mills & Garitty, 115 Tex. 469, 283 S. W. 754; Indiahoma Refining Co. v. Wood (Tex. Civ. App.) 255 S. W. 212. While the general rule is that one member of a mining partnership is not liable upon a debt for money borrowed by any other member of the partnership, the rule is equally well established that all members of a mining partnership, joint adventure or joint-stock association and business trust, engaged in mining, are liable as partners (in the absence of a special agreement with creditors exempting them) for all indebtedness incurred for necessaries either in the way of materials or labor furnished for the prosecution of the work. Harvey Co., Ltd., v. Braden (Tex. Civ. App.) 260 S. W. 655; Indiahoma Ref. Co. v. Wood, supra; Thornton's Oil & Gas Law (4th Ed.) § 363; Hollister v. McCamey, 115 Tex. 49, 274 S. W. 562; Victor Ref. Co. v. City Nat. Bank (Tex. Sup.) 274 S. W. 561; Continental Supply Co. v. Adams (Tex. Civ. App.) 272 S. W. 325.

[6-8] It appears from the agreed statement that the plaintiff's claims in the instant case are for material, machinery, fuel oil, and labor, actually furnished by the several creditors and used by McNeese and Wiley in drilling the second well. During the prosecution of the work appellant visited the site of the well, and must be held to have known that such expenditures were being made and that they were necessary. Under the agreed statement that the pleadings were sufficient,

we must presume, in support of the judgment, that plaintiff pleaded these facts by way of estoppel. He therefore tacitly agreed to all that was being done in and about the prosecution of the work, and is therefore estopped to deny liability. Thompson v. Schmitt, 115 Tex. 53, 274 S. W. 560; Continental Supply Co. v. Adams (Tex. Civ. App.), 272 S. W. 325; Roberts v. McKinney (Tex. Civ. App.) 187 S. W. 976; and authorities, supra.

The judgment is affirmed.

### On Motion for Rehearing.

[9] In a rather vigorous motion the appellant attacks the original opinion, asserting that it is based upon the holding that he was a joint adventurer with the other parties composing the mining partnership engaged in drilling the second well. We possibly erred in not more clearly defining the legal status of appellant and in using the term "joint adventurer," and the error is made the ground of considerable pointed criticism and vehement argument against the correctness of the opinion. That the parties were engaged in developing a lease, and the further fact that their interests were not represented by stock, either in the corporation or a joint-stock association, fixes their relationship as that of partners. In a mining partnership, if they had simply owned the lease, without any effort to develop it, they might have been tenants in common, but the process of development was going on when the appellant purchased his one-sixteenth interest, and, according to his own testimony under the rules announced in Munsey v. Mills & Garitty, 115 Tex. 469, 283 S. W. 754, and the other cases cited in the original opinion, the owners were partners, and constituted a mining partnership. According to Bolding's testimony, he was a dormant partner in the firm. The agreed statement shows that in January he paid McNeese and Wiley, who were active partners, $600, and received from them a letter evidencing that he was the owner of a one-sixteenth interest in the lease, which then had one well on it. The fact that he visited the well and that the drillers were instructed to give him any information he might call for is immaterial, so far as fixing his status is concerned.

[10] "The rule is well stated in a federal case [Bigelow v. Elliot, Fed. Cas. No. 1399, 1 Cliff. 28], which holds that persons who jointly participate in the profits of trade or business ostensibly carried on by another for his sole use and benefit, are equally liable, when discovered, with the ostensible owner to all creditors of the firm, whose debts were contracted during the time of such participation without knowledge of the same, or of the actual relation between the parties at the time the credit was given and that liability exists notwithstanding the parties may have

privately stipulated that they shall not be partners and in contemplation of law really are not such as between themselves. A study of the various cases upon the question will show the above statement to be in accord with a great majority of these cases. The term 'secret partner' is sometimes used as synonymous with dormant partner, and sometimes in a slightly different and broader sense. In the Am. & Eng. Enc. of Law, the following definition of dormant partner is given: 'A dormant partner is one who takes no active part in the business, and whose name does not appear in the title of the partnership, and who is unknown to those who give credit to the firm.' The same work designates a secret partner as 'one who participates in the business but keeps his relations with the firm a secret,' thus making participation or nonparticipation in the business the distinction between the two, while later in the discussion of the cases, the distinction is practically obliterated, several cases being cited to the effect that a dormant partner may act as clerk, or agent." 1 Rowley's Modern Law of Partnership, § 139; 20 R. C. L. p. 1072, § 318, page 1057, § 302.

Under the rule in the Munsey Case, supra, the appellant became a dormant partner with McNeese and Wiley, not only by operation of law, but as the inevitable result of the circumstances surrounding his purchase of an interest in the lease. 1 Rowley's Modern Law of Partnership, 153.

The case of Freeman v. Huttig, 105 Tex. 560, 153 S. W. 122, Ann. Cas. 1916E, 446, is not authority upon any proposition to be considered in this case. In that case it was sought to hold an incoming partner for debts of the old firm, and it further appears that all parties expected to organize a corporation at the time the new partner came into the firm. Neither is the case of Randall v. Merideth, 76 Tex. 669, 13 S. W. 576, authority here, because it is conceded in the original opinion that even the active member of a mining partnership has no implied authority to borrow money upon the credit of the firm, but all of the authorities hold that a managing partner or active partner may bind the firm for necessaries in the way of labor and materials employed and used in the prosecution of the work. 1 Rowley's Modern Law of Partnership, § 153.

That a dormant partner who participates in the profits may be held subject to the normal liabilities against his firm, however secret he may keep his relations, seems to be settled by the great weight of authority, as shown by the Texas cases cited in the original opinion. The law will not permit him to secretly share in the profits of a firm without at the same time sharing the risks and bearing his part of the losses as to third persons. This rule holds true even where the dormant partner was not known as a member of the firm, at the time of the creation of the debt, and in spite of any agreement entered into between the parties purporting to limit the liability of the dormant partners; so the question of estoppel is also an immaterial one in determining this appeal. 20 R. C. L. p. 1072, § 319; 30 Cyc. 397; 1 Bates on Partnership, §§ 156 and 157; 1 Rowley's Modern Law of Partnership, §§ 486, 500; Moore v. Williams, 26 Tex. Civ. App. 142, 62 S. W. 977.

Believing that a proper judgment has been rendered, the motion is overruled.